NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHELLE TATIS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>ALLIED INTERSTATE, LLC and JOHN DOES 1-25,<br><br>*Defendants*. | Civil Action No. 16-00109<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

### I.    INTRODUCTION

This matter comes before the Court on Defendant Allied Interstate, LLC's ("Allied" or "Defendant") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff brought a class action against Allied alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* ("FDCPA"). Plaintiff claims that Allied violated Sections 1692e and 1692f of the FDCPA by attempting to collect a settlement payment on a time-barred debt without disclosing that the statute of limitations had expired. Allied moved for a judgment on the pleadings pursuant to the Third Circuit's decision in *Huertas v. Galaxy Asset Management*, 641 F.3d 28 (3d Cir. 2011). The Court reviewed all submissions made in support and in opposition to the motion, and considered the motion without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons that follow, Defendant's motion is treated as a one to dismiss and it is granted.

1

## II. FACTS AND PROCEDURAL HISTORY

The facts of this matter derive from Plaintiff's Complaint and the exhibit attached thereto. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Sometime before May 18, 2005, Plaintiff incurred a debt to Bally Total Fitness Holding Corporation. Compl. at ¶ 14 (D.E. 1). Plaintiff's debt was later bought by or assigned to LVNV Funding LLC ("LVNV"). *Id.* at ¶ 18. On May 18, 2015, on behalf of LVNV, Allied sent a letter to Plaintiff attempting to collect the debt (the "Collection Letter"), which allegedly totaled $1289.86. Compl., Ex. 1 at 1. At the time the Collection Letter was sent, the statute of limitations had expired and the debt was no longer legally enforceable. *Id.* at ¶ 26. The Collection Letter offered to settle Plaintiff's debt for $128.99, which amounted to a 90% discount of the actual amount owed. *Id.*, Ex. 1 at 1. The Collection Letter stated in relevant part:

> We are a debt collection company and we have been retained on behalf of LVNV Funding LLC to collect the debt noted above. This is an attempt to collect a debt and any information obtained will be used for that purpose.
>
> LVNV Funding LLC is willing to accept payment in the amount of $128.99 in settlement of this debt. You can take advantage of this settlement offer if we receive payment of this amount or if you make another mutually acceptable payment arrangement within 40 days from the date of this letter. We are not obligated to renew this offer.
>
> . . . .
>
> Unless you notify us within 30 days after receiving this letter that you dispute the validity of this debt or any portion thereof, we will assume that this debt is valid. If you notify us in writing within 30 days after receiving this letter that you dispute the validity of this debt, or any portion thereof, we will obtain and mail to you verification of the debt or a copy of the judgment. If you request of us in writing within 30 days after receiving this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

*Id.*, Ex. 1 at 1.

The reverse side of the letter provided instructions on how to stop Allied from contacting Plaintiff and how to make a complaint about its collection efforts. This portion provided as follows:

> Federal and State laws prohibit certain methods of debt collection, and require that we treat you fairly. You can stop us from contacting you by writing a letter to us that tells us to stop the contact. Sending such a letter does not make the debt go away if you owe it. Once we receive the letter, we may not contact you again, except to let you know that there won't be any more contact or that we intend to take a specific action.
>
> If you have a complaint about the way we are collecting this debt, please write to us at PO Box 361445, Columbus, OH 43236, email us at advocacygroup@allied-interstate.com, or call us toll-free at 800-811-4214 between 9:00 A.M. Central Time and 5:00 P.M. Central Time Monday - Friday.
>
> The Federal Trade Commission enforces the Fair Debt Collection Practices Act (FDCPA). If you have a complaint about the way we are collecting your debt, please contact the FTC online at www.ftc.gov; by phone at 877-FTC-HELP; or by mail at 600 Pennsylvania Ave., NW, Washington DC 20580.

*Id.*, Ex. 1 at 2.

On January 8, 2016, Plaintiff filed a class action alleging violations of the FDCPA under 15 U.S.C. §§ 1692e & f. Prior to filing an answer, Defendant moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Defendant's Motion for Judgement on the Pleadings, D.E. 6 ("Def. Br."). Plaintiff opposed Defendant's motion (D.E. 13, "Pl. Op."), and Defendant subsequently filed a reply brief (D.E. 14, "Def. Reply").

In relying upon the Third Circuit's decision in *Huertas*, Defendant argues that it did not violate 15 U.S.C. § 1692e of the FDCPA by attempting to collect Plaintiff's time-barred debt because it did not threaten legal action. Def. Br. at 8. Defendant maintains that use of the word "settle" in the Collection Letter cannot be interpreted as a threat of litigation, even from the

3

prospective of the least sophisticated consumer. *Id.* at 9-12. According to Defendant, there is no requirement under the FDCPA for a debt collector to advise a debtor whether or not a debt is legally enforceable. *Id.* at 12-14. Similarly, Defendant argues that Plaintiff fails to state a claim under 15 U.S.C. § 1692f because it is based on the same conduct underlying the Section 1692e count. *Id.* at 15-16.

Plaintiff counters that Defendant violated the FDCPA because the "Collection Letter was deceptive, in offering to 'settle' the Plaintiff's debt with a payment plan, without advising the Plaintiff that the statute of limitations on the entire debt would be restarted by the tender of any monetary payment." Pl. Opp. at 10. Arguing that *Huertas* is distinguishable, Plaintiff relies on authority from the District of New Jersey and the Sixth and Seventh Circuits to support her position that an offer to settle may mislead the least sophisticated consumer into believing that a time-barred debt is legally enforceable, even when litigation is not threatened. *Id.* at 10-11. Plaintiff also contends that the Collection Letter was "deceptive and misleading because, upon reading the Letter, the least sophisticated debtor would believe that she had a legal obligation to pay the subject debt." *Id.* at 11.

On April 14, 2016, the Court ordered the parties to submit supplemental briefing "as to which state law applies to the potential revival of the statute of limitations of the allegedly owed debt if partial payment of the debt occurs." D.E. 15. The Court also ordered the parties to "discuss what impact, if any, the applicable state law has on the pending [motion]." *Id.*

In their supplemental briefing, both parties agreed that New Jersey law applies as to the potential renewal of the statute of limitations. Plaintiff's Supplemental Brief ("Pl. Supp. Br.") at 6; Defendant's Supplemental Brief ("Def. Supp. Br.") at 1. Plaintiff contends that New Jersey law has no impact on this motion other than establishing the six-year statute of limitations under

N.J.S.A. 2A:14-1. Plaintiff also cited to a recently decided opinion from the District of New Jersey to support its position that "Defendant's Collection Letter was deceptive, in offering to 'settle' the Plaintiff's debt, without advising the Plaintiff that the statute of limitations on the entire debt had already run." *Id.* at 6 (citing *Filgueiras v. Portfolio Recovery Associates, LLC*, No. 15-8144, 2016 WL 1626958 (D.N.J. Apr. 25, 2016)). Defendant counters that New Jersey law is significant because it "confirms that the statute of limitations would not have been revived if Plaintiff had actually accepted the settlement offered to her and made the payment." Def. Br. at 3. Defendant also distinguishes *Filgueiras* arguing that settlement by means of a single payment of a time-barred debt -- as opposed to a payment plan -- is not misleading or violative of the FDCPA. *Id.* at 2-3.

### III. LEGAL STANDARD

#### A. Standard of Review

As an initial matter, the Court notes that Defendant's motion for judgment on the pleadings should have been filed as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) because it was filed prior to the close of the pleadings. *See* F.R.C.P. 12(c) ("*After the pleadings are closed* -- but early enough not to delay trial -- a party may move for judgment on the pleadings." (Emphasis added)); *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991) ("A Rule 12(b) motion to dismiss a complaint must be filed before any responsive pleading. A Rule 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed.").

As a result, the Court will consider the motion as one to dismiss. *Grant v. JPMorgan Chase Bank*, No. 12-06248, 2013 WL 1558773, at *1 (D.N.J. Apr. 10, 2013) (noting that "as Defendants made this motion [for judgment on the pleadings] prior to the close of pleadings, the Court will consider it pursuant to Fed R. Civ. P. 12(b)(6)"). The standard of review for a motion for judgment on the pleadings and a motion to dismiss for failure to state a claim are identical. *Gebhart v.*

*Steffen*, 574 F. App'x 156, 158 (3d Cir. 2014) ("Rule 12(b)(6) motions to dismiss and Rule 12(c) motions for judgment on the pleadings for failure to state a claim are judged according to the same standard.").

According to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court should dismiss a complaint when it fails "to state a claim upon which relief can be granted." In analyzing a motion to dismiss under Rule 12(b)(6) the court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In addition to the complaint, the Court may also consider any exhibits attached thereto. *See Pension Ben. Guar.*, 998 F.2d at 1196 (noting that when deciding a motion to dismiss, courts generally consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While not a "probability requirement," plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

**B. FDCPA**

The FDCPA was enacted by Congress in 1977 with the purpose of eliminating "abusive, deceptive, and unfair debt collection practices" by debt collectors. 15 U.S.C. § 1692(a). "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013). To that end, "[l]ender-debtor communications potentially giving rise to claims under the FDCPA should be analyzed from the perspective of the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006)). "[A]lthough this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)).

To succeed on an FDCPA claim, a plaintiff must demonstrate that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Here, the only disputed element is the fourth -- whether Allied violated Section 1692e or 1692f of the FDCPA.[1]

---

[1] When a debtor is notified of an alleged debt owed, there are certain requirements that must be included in the notice or provided shortly thereafter. The FDCPA provides that

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing -- (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a

7

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Plaintiff claims that Allied violated the provision by (1) "[f]alsely representing the legal status of the debt," (2) "[m]aking false threats to take action that cannot be legally taken," and (3) "[u]sing false representations and/or deceptive means to collect or attempt to collect the debt." Compl. ¶ 38 (citing 15 U.S.C. § 1692e(2)(A), (5), & (10)). Plaintiff also alleges a violation of Section 1692f, which acts as a catch-all provision indicating that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," and lists eight non-exclusive examples. The issue here is whether Allied's offer of a reduced-payment settlement on a time-barred debt -- without informing Plaintiff that the statute of limitations had expired -- is a violation of Sections 1692e and f of the FDCPA.

In *Campuzano-Burgos v. Midland Credit Management, Inc.*, the Third Circuit made clear that when a debt collector is seeking to collect an amount owed, "[t]here is nothing improper about making a settlement offer." 550 F.3d 294, 299 (3d Cir. 2008) (quoting *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007)). The court explained that forbidding settlement

---

> statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g. Here, Plaintiff does not contest the adequacy of the notice she received regarding the above-listed requirements.

offers "would force honest debt collectors seeking a peaceful resolution of the debt to file suit in order to advance efforts to resolve the debt -- something that is clearly at odds with the language and purpose of the [FDCPA]." *Id.* (quoting *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 399 (6th Cir. 1998)). One benefit of settlement letters is that a claim may be resolved "without the needless cost and delay of litigation and is certainly less coercive and more protective of the interests of the debtor." *Id.* (internal quotation marks omitted). Notably, however, despite *Campuzano-Burgos*'s endorsement of debt collection settlement offers, it appears that the debt in that case was not time barred, which is the issue in the current matter.

In *Huertas*, the plaintiff alleged that the defendant violated the FDCPA by sending him a letter attempting to collect a time-barred debt. 641 F.3d at 31. The letter stated, in part, that the plaintiff's debt had been reassigned and requested that he "call to *resolve* this issue." *Id.* at 33 (emphasis added). Initially, the court noted that a "debt obligation is not extinguished by the expiration of the statute of limitations, even though the debt is ultimately unenforceable in a court of law." *Id.* at 32. In other words, the court in *Huertas* found that even though the statute of limitations had run, the plaintiff still owed the debt, "but he ha[d] a complete legal defense against having to pay it." *Id.* As to whether the defendant could lawfully attempt to collect on the time-barred debt, the court held that "the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt *so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts.*" *Id.* at 32-33 (emphasis added). To determine whether litigation has been threatened, the Court analyzes the debt collector's communications "from the perspective of the least sophisticated debtor." *Id.* at 33 (internal quotation marks omitted).

About two years after *Huertas* was decided, the Federal Trade Commission ("FTC") conducted a study to better understand the debt buying and collection industry and issued a report

9

detailing its findings. Federal Trade Commission, *The Structure and Practice of the Debt Buying Industry* 1-2 (2013) (the "*2013 Report*"). The FTC is one of two federal agencies that has been delegated the responsibility to enforce the FDCPA.[2] *Id.* at 3. According to the *2013 Report*, when a debt collector attempts to obtain payment for a time-barred debt, the debtor may be misled into believing that he or she can be sued on the debt if it is not paid. *Id.* at 46-47. The *2013 Report* also noted that offers of partial repayments are similarly problematic because "such efforts may convey or imply to consumers that they have only obligated themselves in the amount of the partial payment." *Id.* at 47. The *2013 Report* explained that in many states the law provides that when a consumer makes a partial payment on a time-barred debt, the entire balance of the debt is revived for a new statute of limitations period. *Id.*

The *2013 Report* cited to a prior FTC report issued in 2010 (the "*2010 Report*"),[3] which "addressed whether debt collectors, including debt buyers, must make disclosures to prevent deception in collecting on time-barred debts." *Id.* The *2010 Report* found that "if a collector knows or should know that it is collecting on time-barred debt, then it generally must inform the consumer that '(1) the collector cannot sue to collect the debt and (2) providing a partial payment would revive the collector's ability to sue to collect the balance.'" *Id.* (quoting the *2010 Report* at 28). The *2010 Report* concluded that such disclosures were necessary to protect consumers from being misled because most "do not know or understand their legal rights with respect to the collection of time-barred debt." *Id.* (quoting the *2010 Report* at 26). Importantly, although the court in *Huertas* -- which was decided in 2011 -- did not have the benefit of the *2013 Report*, the

---

[2] The Consumer Financial Protection Bureau is the second agency. The *2013 Report* at 3.

[3] The full name of the *2010 Report* is *Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration* (2010).

10

*2010 Report*'s recommended disclosures were readily available at the time of the Third Circuit's decision but were not referenced or adopted.

The *2013 Report* also cites a case where the FTC brought suit against a debt buyer who collected on a time-barred debt without disclosing to the consumer that collection on the debt was no longer legally enforceable. *Id.* at 48. There, the complaint alleged that "many consumers do not know if the accounts that [the debt buyer] is attempting to collect are beyond the statute of limitations" and that "it was deceptive for [the debt buyer] to fail to disclose to consumers that they could not be sued if they did not pay." *Id.* The case ultimately settled. *Id.* Part of the settlement agreement required the debt buyer to disclose to consumers that they could not be sued for failing to pay a time-barred debt. *Id.* The debt buyer also "agreed not to sue on time-barred debts for which it had made such disclosures as well as not to sell, transfer, or assign to another the right to sue on such debts." *Id.*

The Seventh and Sixth Circuits subsequently issued opinions consistent with the FTC's position and recommendations. In *McMahon v. LVNV Funding, LLC*, two debtors received letters offering to settle their time-barred debts for a percentage of the original amount owed. 744 F.3d 1010, 1013-14 (7th Cir. 2014). The debt collection letters did not disclose to the debtors that the collector was time-barred from enforcing the debt due to the expired statute of limitations. *Id.* The court held that "if the debt collector uses language in its dunning letter that would mislead an unsophisticated consumer into believing that the debt is legally enforceable, regardless of whether the letter actually threatens litigation (the requirement the Third and Eighth Circuits added to the mix), the collector has violated the FDCPA." *Id.* at 1020. In expressly rejecting the Third Circuit's reasoning in *Huertas*, the Seventh Circuit explained that "[a]n unsophisticated consumer who read the dunning letter [that the plaintiffs] received could have been led to believe that her debt was

11

legally enforceable." *Id.* at 1021. Additionally, the court noted that the offer of settlement in the collection letters made them even more deceptive because it "reinforced the misleading impression that the debt was legally enforceable." *Id.* In sum, the court in *McMahon* concluded that the FDCPA was violated because "an unsophisticated consumer could be misled by a dunning letter for a time-barred debt, especially a letter that uses the term 'settle' or 'settlement.'" *Id.* at 1022.

In *Buchanan v. Northland Group, Inc.*, a collector sent a debtor a letter offering to accept a reduced payment as settlement of a time-barred debt. 776 F.3d 393, 395 (6th Cir. 2015). The settlement offer did not disclose that the statute of limitations had run or that under the applicable state law, making a partial payment (as opposed to the full settlement amount) would restart the statute-of-limitations clock. *Id.* at 396. The Sixth Circuit held that the plaintiff's complaint was sufficient to state a claim because "a 'settlement offer' with respect to a time-barred debt may falsely imply that payment could be compelled through litigation." *Id.* at 399. Additionally, the court explained that an unsophisticated debtor who cannot afford the full settlement amount might make a partial payment assuming that some payment is better than none. *Id.* Under the applicable state law, making a partial payment would reset the statute of limitations allowing the creditor to sue for the entire debt. *Id.* Unlike *McMahon*, which expressly rejected *Huertas*, *Buchanan* distinguished *Huertas* by noting that *Huertas* did not address "the possibility that consumers might still be confused about the enforceability of a debt or the pitfalls of partial payment" and "most pertinently," *Huertas* did not concern "a letter offering a 'settlement.'" *Id.* at 400. For those reasons, the court concluded that the plaintiff had alleged facts sufficient to state a claim under the FDCPA. *Id.*

District Courts in the Third Circuit have taken different views in interpreting *Huertas* as applied to settlement offers of time-barred debts. In *Johns v. Northland Group Incorporated*, the

12

plaintiff had received settlement offers on two outstanding debts that were allegedly time barred. 76 F. Supp. 3d 590, 592-93, 595 (E.D. Pa. 2014). Relying on *Huertas* and *Campuzano-Burgos*, the court granted the defendant's motion to dismiss finding that the collection letter's "use of the term 'settlement offer' [neither] misrepresented the legal status of the debt [n]or implied that litigation is imminent." *Id.* at 600.

In *Fackina v. RJM Acquisitions, LLC*,[4] the defendant sent the Plaintiff a debt collection letter requesting payment in full, either through a lump sum payment or a payment plan of $10 per month. D.E.13-1 at 8:6-13. The court found *Huertas* distinguishable because of the partial payment option offered to the plaintiff, which "may be misleading, because upon a partial payment it revives the amount that's owed by the debtor, because the statute of limitations starts anew." *Id.* at 9:6-13. The court also noted that *Huertas* did not consider the position of the FTC in its *2013 Report* concerning the effects of partial payments. *Id.* at 9:19-21. Citing to *McMahon* and *Buchanan*, the court concluded that the payment plan offer rendered the collection potentially misleading to an unsophisticated consumer and therefore sufficient to state a claim under the FDCPA. *Id.* at 11:15 to 12:8.

In *Filgueiras v. Portfolio Recovery Associates, LLC*, a debt collector mailed two collection letters to the plaintiff, one in 2014 (the "2014 Letter") and the second in 2015 (the "2015 Letter"). No. 15-8144, 2016 WL 1626958, at *1 (D.N.J. Apr. 25, 2016). The 2014 Letter offered three settlement options with discounted repayments. *Id.* The 2015 Letter offered a "Single Payment Savings." *Id.* The 2015 Letter also stated that "[b]ecause of the age of your debt, we will not sue you for it." *Id.* The court found that "*Huertas* 'threat of litigation' requirement does not apply to

---

[4] The District of New Jersey's decision in *Fakina* was issued in an oral opinion by Judge Sheridan.

13

situations where a debt collector offers to 'settle' a time-barred debt, because such facts were not present in *Huertas*." *Id.* at *7. The court agreed with the Sixth Circuit's opinion in *Buchanan* that *Huertas* is distinguishable because *Huertas* "is limited to the proposition that a debt collector may legally request voluntary repayment on a time-barred debt, because such a request is 'not a thinly veiled threat to sue.'" *Id.* (quoting *Buchanan*, 776 F.3d at 399). The court in *Filgueiras* also discussed the reasoning in *Johns*. The court noted that *Johns* relied on *Campuzano-Burgos*, but "there is no indication that the debt at issue in [*Campuzano-Burgos*] was time-barred." *Id.* at *6-7. The *Filgueiras* court found that "the district court in *Johns* did not specifically analyze the interplay between an offer of 'settlement' on a time-barred debt, and instead relied on case law which permits offers of settlement more generally." *Id.* at *7.

The judge in *Filgueiras* reached two conclusions. First, the court found that "because the plain language of 15 U.S.C. § 1692e(2)(A) specifically prohibits the false representation of the character or legal status of any debt, a misrepresentation about that fact violates the FDCPA, regardless of whether litigation is threatened." *Id.* Second, the judge explained that "[w]hen a debt collector offers to 'settle' a time-barred debt, it is plausible that the legal status of the debt has been misrepresented since 'it is plausible that an unsophisticated consumer would believe a letter that offers to "settle" a debt implies that the debt is legally enforceable.'" *Id.* (quoting *McMahon*, 744 F.3d at 1020). In light of those conclusions, the court in *Filguerias* found that the 2014 Letter plausibly violated the FDCPA because it "presents 'Settlement Options' for Debt that was arguably time-barred," which may lead the least sophisticated consumer to believe the debt was legally enforceable. *Id.* at *9. The 2014 Letter also failed to disclose that "the legal consequences of a settlement or a payment -- in particular that it would restart the statute of limitations, giving [t]he creditor a new opportunity to sue for the full debt." *Id.* As to the 2015

14

Letter, however, the court concluded that it did not violate the FDCPA because the least sophisticated debtor could not plausibly believe the debt was legally enforceable because the 2015 Letter expressly stated that due to "the age of your debt, *we will not sue you for it*." *Id.* at *11 (emphasis added).

In *Lugo v. Firstsource Advantage, LLC*, No. 15-06405, 2016 WL 3406230 (D.N.J. June 16, 2016), the District Court also addressed the same issue. There, the plaintiff was offered a settlement option to make a lump sum payment for half of the amount he owed on his time-barred debt. *Id.* at *1. The court, relying on *Huertas*, concluded that because the letter sent to the plaintiff did not threaten litigation the FDCPA was not violated under the least sophisticated debtor standard. *Id.* at *2. In a footnote, the court in *Lugo* distinguished *Filgueiras* by noting that the settlement letter at issue did "not list specific settlement options and instead uses the word 'settle,' include[d] a lump sum payment option, and offer[ed] to speak to the debtor about payment options." *Id.* n.2. Accordingly, the court granted the defendant's motion to dismiss. *Id.* at *3.

Notably, the decisions in *Fackina*, *Filgueiras*, and *Lugo* did not analyze whether partial payment of a time-barred debt would actually revive the statute of limitations pursuant to the underlying state law. Instead, *Fackina* and *Filgueiras* assumed the statute of limitations would be reset upon partial payment. *See Filgueiras*, 2016 WL 3406230 at *9; *Fackina*, D.E.13-1 at 9:10-13.

As the parties agree, New Jersey is the relevant state law governing the statute of limitations at issue here. In New Jersey, the statute of limitations on a time-barred debt can only be revived if the debtor makes a written, unconditional promise to pay the full debt. *Herzog v. B&M Oil Gas Co.*, 2008 WL 2796475, *4 (N.J. App. Div. July 22, 2008) (citing N.J.S.A. 2A:14-24). Thus, a partial payment on a debt made after the statute of limitations has run does not, standing alone,

15

revive the statute of limitations. *Id.*; *see also Cohen v. Dynamic Recovery Sols.*, No. 16-576, 2016 WL 4035433, at *3 (D.N.J. July 26, 2016) ("While it may be the case that under the laws of most states, a partial payment on a time-barred debt revives the entire balance of the debt for a new statute of limitations period, this is not the case under New Jersey law." (Internal quotation marks and citation omitted)); *Genova v. Total Card, Inc.*, No. 16-1260, 2016 WL 3360662, at *7 (D.N.J. June 8, 2016) (concluding that under New Jersey law, "a partial settlement of an alleged, time-barred debt does not automatically revive the statute of limitations because it is not a recognition of, and promise to pay, the full debt."). Accordingly, "[w]hen a partial payment is made after the statutory period has run, the party seeking to revive the statute must show (1) that the payment was partial, and (2) an act or declaration which establishes the debtor's recognition of, and intention to pay, the *entire claim*," and (3) the promise to pay "is unconditional and in a signed writing." *Cohen*, 2016 WL 4035433, at *6 (emphasis added and internal quotation marks omitted).

## IV.   ANALYSIS

At the outset, the Court notes that the better practice would have been for Allied to make the two disclosures that the FTC recommends, that is, informing the debtor that Allied cannot sue to collect a time-barred debt and warning the debtor that a partial payment may potentially revive the statute of limitations. While the FTC's recommendations may constitute best practices, the question is whether the failure to follow those suggestions amounts to a violation of the FDCPA in light of Third Circuit precedent.

Specifically, the Court views the critical question as whether Defendant's collection letter falls under the purview of *Huertas*. The Court agrees with *Filgueiras* that *Huertas* did not discuss the issue concerning the revival of the statute of limitations. The Court also agrees that the collection letter in *Huertas* did not use the word "settlement."

The Court, however, respectfully disagrees with *Filgueiras* and finds that the current matter falls within the ambit of *Huertas*. While the collection letter in *Huertas* did not use the word "settle" it did use the word "resolve." The definitions of the words "settle" and "resolve" are strikingly similar and the Court does not see a material difference between the two. *Compare The American Heritage Dictionary of the English Language* 1593 (4th ed. 2009) (defining "settle" as "[t]o conclude (a dispute, for example) by a final decision") *with id.* at 1484 (defining "resolve" as "[t]o bring to a usually successful conclusion"). In other words, it does not appear to the Court that there will be an appreciable difference to the least sophisticated debtor if she receives a dunning letter offering to "resolve" a debt as opposed to one that offers to "settle" the debt. It is undisputed that a debt collector may attempt to collect on a debt otherwise barred by the statute of limitations. Any debt collector who is willing to take less than the full amount is going to seek to resolve, settle, reach a resolution, or come to an agreement as to the terms of the lesser payment. Thus, an offer to resolve a debt for a lesser amount is not substantively distinct from an offer to settle the same debt for a lesser amount. Therefore, the Collection Letter's use of the word "settle" does not in and of itself make it misleading or deceptive under the FDCPA.

Moreover, the circumstances in this matter are arguably less egregious than those found in *Huertas*. In *Huertas*, the collection agency attempted to recover the full amount owed while here Defendant offered a 90% discount. In addition, the debtor in *Huertas* was merely asked to call in and attempt to resolve the matter. Here, by comparison, the Defendant's offer was clearly set forth in a written letter thereby providing greater protection to Plaintiff as to the contours of any agreement. Thus, regardless of the law governing the revival of the statute of limitations, if Plaintiff had decided to pay the offered $128.99, the matter would have been concluded by the very terms of the Collection Letter.

17

Critically, unlike *McMahon* and *Buchannan* where the applicable state law dictated that partial payment of a time-barred debt restarts the statute of limitations, New Jersey law provides otherwise. *See Cohen*, 2016 WL 4035433 at *3; *Genova*, 2016 WL 3360662 at *7. Plaintiff could not have been misled or deceived into reviving the statute of limitations by making a partial payment because revival was only possible if Plaintiff had also acknowledged in a signed writing that she owed the full amount. Accordingly, under New Jersey law, there is no risk that the least sophisticated consumer would be misled into unknowingly restarting the statute of limitations on a time-barred debt merely by submitting a partial payment. Thus, Plaintiff's basic premise -- that the "Collection Letter was deceptive, in offering to 'settle' the Plaintiff's debt with a payment plan, without advising the Plaintiff that the statute of limitations on the entire debt would be restarted by the tender of any monetary payment[,]" (Pl. Opp. at 10) -- is critically flawed.

The Court recognizes that the Collection Letter did not contain cautionary language informing Plaintiff that the debt was legally unenforceable and that, as noted above, doing so would have been the better practice. The lack of such a disclosure, however, was not a violation of the FDCPA in light of *Huertas*. As a result, the absence of that language does not, by omission, falsely represent the legal status of the debt, threaten litigation, or serve as a deceptive tactic in collecting or attempting to collect the debt under 15 U.S.C. § 1692e. In this regard, the Court is in agreement with *Johns* and *Lugo*. Therefore, Plaintiff has failed to state a claim under Section 1692e.

Additionally, Plaintiff has failed to state a claim under 15 U.S.C. § 1692f. That Section provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt" and lists eight examples of unconscionable practices. 15 U.S.C. § 1692f. "Courts routinely dismiss § 1692f claims when a plaintiff does not identify any misconduct beyond

that which he asserts violates other provisions of the FDCPA." *Cohen*, 2016 WL 4035433, at *5. Here, Plaintiff alleges the same conduct to support her Section 1692f claim as she did for her Section 1692e claim -- that Allied violated the FDCPA "by offering a settlement on a time[-]barred debt without notifying the Plaintiff that this debt was time[-]barred." Compl. at ¶ 43. As a result, for the reasons discussed above, Plaintiff has failed to state a claim under Section 1692f.

## V. CONCLUSION

For the reasons set forth above, Defendant's motion, properly characterized as one to dismiss, is granted. An appropriate Order accompanies this Opinion.

Dated: September 29, 2016

_____
John Michael Vazquez, U.S.D.J.